UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PATRICK J. DAILEY,

               Plaintiff,         **DECISION AND ORDER**
                                                      **1:14-cv-00841-MAT**

  -vs-

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

               Defendant.

---

## INTRODUCTION

Represented by counsel, Patrick J. Dailey ("Plaintiff") instituted this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner")[1] denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## PROCEDURAL STATUS

Plaintiff protectively filed an application for DIB on January 30, 2012, alleging that he was disabled commencing July 13, 2010, due to blindness in his left eye and chronic headaches.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

(T.130-31, 170, 174).[2] The application was denied initially on March 8, 2012 (T.44-50, 62), and was denied on reconsideration on April 26, 2012 (T.51-59, 64-69). On May 1, 2012, concurrently with his written request for a hearing, Plaintiff filed an application for SSI (T.15), alleging disability with an onset date of July 13, 2010. On May 30, 2013, Plaintiff appeared with his attorney for a hearing before Administrative Law Judge William E. Straub ("the ALJ") in Buffalo, New York. (T.27-43). Plaintiff testified, but the ALJ did not call any witnesses. The ALJ issued an unfavorable decision (T.15-22) on June 24, 2013.

The Appeals Council denied Plaintiff's request for review (T.1-4) on August 15, 2014, making the ALJ's decision the final decision of the Commissioner. Represented by new counsel, Plaintiff timely commenced this action.

The parties have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court adopts and incorporates by reference herein the undisputed and comprehensive factual summaries contained in the parties' briefs. The record will be discussed in more detail below as necessary to the resolution of this appeal. For the reasons that follow, the Commissioner's decision is reversed, and the matter is

---

[2] Citations in parentheses to "T." refer to pages from the certified transcript of the administrative record.

remanded for further administrative proceedings consistent with this opinion.

## THE ALJ'S DECISION

The ALJ followed the five-step procedure established by the Commissioner for evaluating disability claims. See 20 C.F.R. §§ 404.1520, 416.920.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 13, 2010, his alleged onset date. (T.17). At step two, the ALJ found that Plaintiff's only severe impairment was left eye blindness. (T.17-18). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (T.18).

The ALJ then determined that Plaintiff has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), except that he "should avoid concentrated exposure to hazards (machinery, heights, etc.) due to his monocular vision." (T.18).

At step four, the ALJ found that Plaintiff, who was 37 years-old on the alleged onset date and had a high school diploma, was unable to perform his past relevant work as a hospital cleaner and maintenance worker, a foreman (irrigation/landscaping), a tow operator, or a truck driver/arborist. (T.21).

At step five, the ALJ relied on Medical-Vocational Rule 202.21 to find that Plaintiff was not disabled. (T.21-22).

**SCOPE OF REVIEW**

A decision that a claimant is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. See 42 U.S.C. § 405(g). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the district court] will not substitute [its] judgment for that of the Commissioner." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002). This deferential standard is not applied to the Commissioner's application of the law, and the district court must independently determine whether the Commissioner's decision applied the correct legal standards in determining that the claimant was not disabled. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984). Failure to apply the correct legal standards is grounds for reversal. Id. Therefore, this Court first reviews whether the applicable legal standards were correctly applied, and, if so, then considers the substantiality of the evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

**DISCUSSION**

**I. Failure to Develop the Record and Error at Step Two**

Although "[t]he claimant has the general burden of proving that he or she has a disability within the meaning of the Act," "because a hearing on disability benefits is a non-adversarial

proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks and brackets omitted). This duty is present "[e]ven when a claimant is represented by counsel." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information. . . ." Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quoting Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)).

Plaintiff underwent retinal repair surgery on his right eye on June 27, 2012, which was performed by Dr. Parks at the Florida Eye Clinic. Plaintiff received follow-up care from Dr. Parks and later from Dr. Nguyen at a different clinic. (T.20, 223, 319). Plaintiff faults the ALJ for failing to obtain the records regarding the June 2012 surgery and post-operative care.

The records indicate that Plaintiff had experienced a retinal detachment in his right eye in June 2012, and had undergone surgery to repair it. (See T.318 (9/26/12 exam notes of Dr. Thomas R. Elmer, Jr.; stating that "Pt reports hx of Retinal Detachments Od [right eye]/Os [left eye]. . . . Had repair Od [right eye] 6-2012 and now has cataract to be removed"); see also T.341-43). And, in his decision, the ALJ acknowledged that Plaintiff had a detached

retina in his right eye which was surgically repaired in June of 2012. (T.19). The absence of the actual surgical records and post-operative care notes regarding Plaintiff's June 2012 eye surgery thus create an "obvious gap" in the record.

This omission was not harmless because Plaintiff's detached right retina was a "severe" impairment that the ALJ erroneously failed to include at step two of the sequential evaluation, even though step two's "severity" requirement is <u>de minimus</u>, meant only to screen out the weakest of claims. <u>Dixon v. Shalala</u>, 54 F.3d 1019, 1030 (2d Cir. 1995). The Regulations define a "severe" impairment as one that "significantly limits" a claimant's ability to perform "basic work activities," which in turn are defined as "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, [etc.]", "[c]apacities for seeing, hearing, and speaking," and "[u]nderstanding, carrying out, and remembering simple instructions." 20 C.F.R. §§ 404.1521(b), 416.921(b). Based on Plaintiff's testimony and the other record evidence, the detached right retina, although it was repaired, had significant and lingering effects on Plaintiff's "[c]apacit[y] for seeing. . . ." <u>Id.</u>

Accordingly, the Court finds that remand is warranted so that the record can be supplemented with the actual surgical records and post-operative care notes regarding Plaintiff's June 2012 surgery on his right eye to repair his detached retina. The ALJ also is

directed to perform a renewed step two analysis, taking into account Plaintiff's status post-retinal detachment repair surgery his right eye.

**II. Erroneous Rejection of New Evidence by Appeals Council**

The Appeals Council is required to consider "new and material" evidence "if it relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. §§ 404.970(b); 416.1470(b). "This regulation was promulgated by the [Commissioner] to provide claimants a final opportunity to submit additional evidence before the [Commissioner]'s decision becomes final." Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996). Evidence is "material" if it is "both relevant to the claimant's condition during the time period for which benefits were denied and probative[,]" and there is "a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." Lisa v. Sec'y of Dep't of Health and Human Servs. of U.S., 940 F.2d 40, 43 (2d Cir. 1991) (quotation and citation omitted). Thus, the Court must distinguish between evidence that reflects on the severity of the claimant's impairment as it existed during the time for which benefits were denied, and evidence pertinent to a new impairment(s) that would not have affected the ALJ's decision. See, e.g., Bosmond v. Apfel, No. 97 Civ. 4109, 1998 WL 851508, at *11–13 (S.D.N.Y. Dec. 8, 1998) (finding that claimant's additional evidence pertained to new medical diagnoses including spinal

stenosis and arthritis, while the record before the ALJ involved only claimant's carpal tunnel syndrome; holding that the new evidence did not indicate that claimant was disabled at the prior relevant periods by her more recently diagnosed problems) (citation omitted).

At issue here is a Vision Impairment RFC Questionnaire completed by Dr. John Rundquist, an optometrist at the Western New York Center for the Visually Impaired, on January 29, 2014. (T.5-7). Dr. Rundquist indicated that he had seen Plaintiff once, on December 18, 2013. Dr. Rundquist stated that, after best correction, Plaintiff's visual acuity in his left eye ("OS") was only "light perception"; in his right eye ("OD"), it was 20/63. As diagnoses, Dr. Rundquist indicated retinal wrinkle and retinal detachment, with an "unknown" prognosis. Due to these diagnoses, Plaintiff experienced increased difficulty with reading, and needed magnification in order to read newspaper-sized print. Dr. Rundquist opined that Plaintiff would experience occasional visual limitations in a competitive work situation. As far as specific limitations on work-related functions, Dr. Rundquist estimated that Plaintiff could frequently perform work activities involving near acuity, far acuity, color vision, and field of vision; could rarely perform work involving accommodation (i.e., focusing on an object as its distance changes); and could never perform work involving depth perception. Dr. Rundquist rated Plaintiff's overall visual

limitations (if Plaintiff were placed in a competitive work situation) as occasional, that is, occurring only 6% to 33% of an 8-hour workday. Dr. Rundquist opined further that Plaintiff was capable of avoiding ordinary hazards in the workplace (such as boxes on the floor, doors left ajar, and approaching people or vehicles), had no difficulty walking up and down stairs, and could work with both small objects and large objects. Plaintiff could drive safely, but only during the daytime. The last numbered item the form stated, "Has your patient been limited as stated above since at least June of 2012, the date the retina in his right eye detached." (T.7). Perhaps because this statement had a period rather than a question mark at the end of it, Dr. Rundquist did not provide an answer. However, the Appeals Council apparently relied on the lack of an answer to find that Dr. Rundquist's RFC questionnaire did not relate to the period prior to the ALJ's decision, and therefore could not be considered. See Xu v. Barnhart, No. CV-04-3927, 2006 WL 559263, at *6 (E.D.N.Y. Mar. 7, 2006) ("Evidence that relates to a claimant's condition after the administrative hearing may not be considered by the Appeals Council."). This was erroneous insofar as it was based on an incomplete record; Dr. Rundquist was asked, but failed to answer, the critical question of whether his opinion related to the relevant time-period. Remand is warranted so that Dr. Rundquist may clarify his opinion, and, assuming that it relates to the period of

time under consideration, the ALJ may consider Dr. Rundquist's opinion in formulating a new RFC.

### III. RFC Unsupported by Substantial Evidence Due to Failure to Obtain an Additional Medical Expert Opinion

Plaintiff argues that the RFC is unsupported by substantial evidence because the record contains only one medical opinion, from a reviewing consultant, that did not include all of Plaintiff's vision impairments. Defendant notes that the Second Circuit has stated that "remand is not always required when an ALJ fails in his duty to request opinions, particularly where . . . the record contains sufficient evidence from which an ALJ can assess the [claimant]'s residual functional capacity." Tankisi v. Comm'r of Soc. Sec., 521 Fed. Appx. 29, 34 (2d Cir. 2013) (summary order) (ALJ's failure to request treating physician opinion did not require remand because, inter alia, medical record was "extensive" and contained another treating source opinion). In this case, the only medical expert opinion in the file was from a non-examining State agency consultant, Dr. Berger, whose review of the record pre-dated Plaintiff's detached right retina, and surgery to repair it, in June of 2012. Thus, Dr. Berger's opinion is incomplete because it does not take into account the vision limitations in Plaintiff's right eye that followed his retinal detachment. There is, therefore, an "obvious gap" in the record because the record contains no medical opinions covering a period of time that

Plaintiff incurred a new, significant medical problem. Remand accordingly is required on this basis.

**IV. Erroneous Credibility Assessment**

When an individual has a medically determinable impairment that could reasonably be expected to produce the symptoms alleged but the objective evidence does not substantiate the alleged intensity and persistence of the symptoms, the ALJ must consider other factors in assessing the individual's subjective symptoms, including (1) the claimant's daily activities; (2) the nature, duration, frequency and intensity of her symptoms; (3) precipitating and aggravating factors; (4) the type of medication and other treatment or measures which the claimant uses to relieve pain and other symptoms; (5) treatment other than medication the claimant has received for relief of pain and other symptoms; (6) any other measures used by the claimant to relieve pain and other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). "On appeal, the court's proper function is merely to determine whether the appropriate legal standards have been applied and assess whether the [Commissioner]'s findings of fact are supported by substantial evidence." Mimms v. Heckler, 750 F.2d 180, 185–86 (2d Cir. 1984).

The Court finds that the ALJ's assessment of Plaintiff's subjective symptoms was legally flawed and not supported by substantial evidence because it cherry-picked evidence from the record that purported to detract from Plaintiff's credibility. In particular, the ALJ focused solely on Plaintiff's limited daily activities to the exclusion of the multiple other factors that the Regulations instruct ALJs to consider. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Courts have consistently noted that "[i]t is legal error to give excessive weight to a claimant's ability to perform basic daily activities when assessing his or her ability to engage in substantial gainful activity." Moss v. Colvin, No. 1:13-CV-731-GHW-MHD, 2014 WL 4631884, at *33 (S.D.N.Y. Sept. 16, 2014)(citing Brown v. Comm'r of Soc. Sec., No. 06-CV-3174(ENV)(MDG), 2011 WL 1004696, at *5 (E.D.N.Y. Mar. 18, 2011)). "There are critical differences between activities of daily living (which one can do at his own pace when he is able) and keeping a full time job." Id. (citing Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in

-12-

social security disability cases.")). Thus, to the extent that Plaintiff's daily activities were properly considered, the ALJ failed to place the burden on the Commissioner to show that those activities[3] were evidence of the RFC to perform full-time competitive gainful employment at the light exertional level. See, e.g., Balsamo v. Chater, 142 F.3d 75, 81–82 (2d Cir. 1998); see also Brown, 2011 WL 1004696, at *5 ("[T]here is no indication in the ALJ's decision that the Commissioner was required to reckon how Brown's occasional outings, relationship with a girlfriend, and episodic driving add up to an ability to sit upright for six hours every workday as required by SSA regulations.").

The ALJ also "cherry picked" evidence from the record by giving excessive weight to Plaintiff's receipt of unemployment benefits from August 2010, to May 2012, and his statement that he felt he was capable of work prior to suffering a detached retina in his right eye in June 2012. (T.20). However, Plaintiff also testified, that after June 2012, he did not feel he could work any more due to the sequellae of his right retinal detachment. The ALJ ignored this testimony.

Prior to June 2012, Plaintiff had loss of vision in his left eye but normal vision in his right eye; however, after June 2012, Plaintiff had significant loss of vision in both eyes. The ALJ's

---

[3] Plaintiff testified to doing dishes, vacuuming, and other "simple things around the house to help out." (T.34). He commented that "everything is a slow process." (Id.).

credibility assessment ignores a substantial portion of the record and fails to account for the limitations due to Plaintiff's detached right retina. Plaintiff testified, for example, that he cannot read a newspaper without a magnifying glass and has no depth perception. (T.33-34, 40). The ALJ did not cite any medical evidence to dispute these statements. The Court notes that Dr. Rundquist's opinion, which was rejected by the Appeals Council, supports Plaintiff's allegations of lack of depth perception and inability to read a newspaper without magnification. On remand, it is likely that the ALJ will need to consult a vocational expert regarding the effects of Plaintiff's lack of depth perception and decreased visual acuity on the occupational base. See, e.g., Santiago v. Apfel, No. 96 CIV. 6521(MBM), 1998 WL 247504, at *7 (S.D.N.Y. May 15, 1998) ("[T]his case is remanded for further fact finding with respect to whether plaintiff's nonexertional impairments in general, and his poor vision in particular, significantly diminish the range of sedentary work available to him. If, under this standard, it appears that the range of work available to plaintiff is significantly diminished, the Commissioner then must produce either testimony from a vocational expert or other similar evidence showing the existence of jobs in the national economy for someone with plaintiff's limitations.") (citing Bapp v. Bowen, 802 F.2d 601, 606 (2d Cir. 1986)).

**CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is denied, Plaintiff's motion for judgment on the pleadings is granted to the extent that the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings consistent with this Decision and Order. In particular, as discussed more fully above, the ALJ is directed to obtain all records pertinent to Plaintiff's June 2012 right retinal detachment, surgery, and after-care; obtain an updated visual RFC assessment from one of Plaintiff's treating physicians; recontact Dr. Rundquist and obtain clarification as to the time-period covered by his RFC assessment and, if it covers the relevant time, consider Dr. Rundquist's RFC assessment; complete a step two severity analysis, formulate a new RFC assessment; re-assess Plaintiff's credibility; and consult a vocational expert, as necessary, to determine whether, and to what extent, the particular limitations caused by Plaintiff's vision impairments erode the applicable occupational basis.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated: June 14, 2017
Rochester, New York.